UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

KENNETH WARREN FORD,
 Plaintiff,

v.               Case No.: 3:23cv5086/LAC/ZCB

SCOTT MAY, et al.,
 Defendants.
_____/

# REPORT AND RECOMMENDATION

This is a *pro se* prisoner civil rights case under 42 U.S.C. § 1983. Plaintiff has sued three Florida Department of Corrections (FDOC) employees who worked at Walton Correctional Institution: (1) Scott May, Warden; (2) A. Ralph, Assistant Warden; and (3) A. Martin, Major. Plaintiff alleges violations of his First and Eighth Amendment rights. Currently before the Court is Defendant May's motion to dismiss, which Plaintiff has opposed. (Docs. 35, 47). For the reasons below, Defendant May's motion to dismiss should be denied.

I. **Summary of Plaintiff's Factual Allegations**[1]

On November 22, 2019, while imprisoned at Walton Correctional Institution, Plaintiff was searched by an FDOC officer after leaving the law library. (Doc. 8 at 5). During the search, the FDOC officer allegedly read and confiscated Plaintiff's "active civil litigation papers" for a lawsuit against another FDOC official. (*Id.* at 5-6). The next day, Plaintiff filed a grievance over the incident. (*Id.* at 6). On November 25, 2019, Plaintiff saw Defendants May, Ralph, and Martin in an area of the prison, and he personally informed them of the FDOC officer's actions. (*Id.*). Plaintiff also told Defendants that he had had filed a grievance but had heard nothing back. (*Id.*). After hearing that he had filed a grievance, Defendants called Plaintiff a "Writ Writer." (*Id.* at 6-7).

Approximately two weeks later on December 10, 2019, Plaintiff was on his way to a mental health classification callout. (*Id.* at 7). All three Defendants were present during the callout. (*Id.*). Plaintiff alleges that, because of the grievance he filed on November 23, 2019, Defendant Martin singled him out during the callout. (*Id.*). Defendant Martin

---

[1] At this point in the proceeding, the Court assumes the allegations are true. *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*, 48 F.4th 1222, 1229 (11th Cir. 2022).

accused Plaintiff of wearing untied shoes—an accusation that Plaintiff disputes. Defendant Martin ordered Plaintiff to step out of the callout line and tie his shoes. (*Id.* at 8). Plaintiff responded, "I don't have an attitude or anything but my shoes are tied. What exactly do you want me to do?" (*Id.*). Defendant Martin replied, "Give me those f****** shoes. You can get em [sic] back later when you learn how to stop writing grievances on my program officers for doing their f****** jobs!" (*Id.*). Plaintiff refused to give Defendant Martin the shoes. (*Id.*). Defendants May and Ralph overheard the disagreement between Plaintiff and Defendant Martin. (*Id.*).

Instead of taking steps to de-escalate the situation or reprimanding Defendant Martin for his actions, Defendant May instigated an altercation with Plaintiff. (*Id.*). More specifically, Defendant May approached Plaintiff, "getting close enough for their noses to [] touch[]." (*Id.*). Defendant May ordered Plaintiff to put his hands behind his back and cuff up. (*Id.*). Plaintiff complied. (*Id.*). Defendant May then placed handcuffs on Plaintiff's wrists and began tightening the cuffs until they caused "unbearable and instant sharp pain due to cutting off blood circulation to [Plaintiff's] wrist[s]." (*Id.*). Defendant May looked at

3

Plaintiff and said, "I'm gonna to break that spirit of yours n*****. You won't be filing no more grievances and lawsuits on me and my people after I snap those fingers and hands boy!" (*Id.*).

Plaintiff told Defendant May that the handcuffs were too tight and complained of "exploding pain and swelling to both his left and right wrist[s] and hands." (*Id.* at 9). After some verbal back-and-forth between Plaintiff and Defendant May, Plaintiff fell to the ground and declared a "psyche emergency." (*Id.*). Defendant May proceeded to "place his left knee on Plaintiff's neck while squatting down and using said knee to pin Plaintiff's face [to] the ground." (*Id.*). Defendant May, "without need or provocation," bent and twisted Plaintiff's left and right hands "diagonally and upward in unnatural positions against the already 'too tight' hand restraints to cause further internal pain in both hands and wrist[s]." (*Id.*).

Plaintiff heard Defendant Ralph yell to Defendant May, "Make sure he can't file any more grievances or lawsuits . . . break that bastards hands . . . ." (*Id.* at 10). Defendant May then applied more force and Plaintiff "thought his wrist to be broken as his left hand was pushed further upward and diagonally." (*Id.*). Plaintiff's left index finger and

4

right thumb were also injured in the incident. (*Id.*). While using force on Plaintiff, Defendant May allegedly "growled" in Plaintiff's left ear, "File a grievance on this boy . . . file one on this like you did [with the other FDOC officer]. I'm breaking these f****** hands today." (*Id.*).

After approximately five minutes, Plaintiff was placed in leg irons and carried back to his dorm. (*Id.* at 11). Plaintiff was seen by a nurse, but he claims the nurse never wrote down his injuries. (*Id.* at 12). As a result of this incident, Plaintiff claims to have suffered "long-term severe internal chronic pain in both his left and right wrist[s] and hands" and has ongoing feeling and mobility issues in his left hand. (*Id.*). He also alleges the incident caused him psychological distress. (*Id.*).

Plaintiff brings claims against Defendants in their individual capacities under the First and Eighth Amendments.[2] (*Id.* at 2, 13-14).

---

[2] With respect to Defendant May—the party whose motion to dismiss is currently before the Court—Plaintiff separates his allegations against Defendant May into four different claims: (1) a First Amendment retaliation claim for manipulating Plaintiff's hands and wrists in the cuffs because he filed a grievance; (2) a First Amendment retaliation claim for placing a knee on Plaintiff's neck for filing a grievance; (3) an Eighth Amendment excessive force claim for using tight handcuffs and twisting Plaintiff's fingers and wrists; (4) an Eighth Amendment excessive force claim for placing a knee on Plaintiff's neck and attempting to break his wrist. (*Id.* at 13-14).

5

As relief, Plaintiff seeks nominal, compensatory, and punitive damages. (*Id.* at 15).

## II. Motion to Dismiss Standard

Defendant May has moved to dismiss Plaintiff's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure. To survive dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). The plausibility standard is met only where the facts alleged enable "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

At the motion to dismiss stage, the plaintiff's allegations are taken as true and construed in the light most favorable to the plaintiff. *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*, 48 F.4th 1222, 1229 (11th

Cir. 2022). Additionally, a *pro se* litigant's complaint must be liberally construed. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006).

## III. Discussion

Defendant May moves to dismiss Plaintiff's claims against him. According to Defendant May, (1) Plaintiff's First Amendment retaliation claims should be dismissed because Plaintiff fails to allege that he engaged in any protected speech or conduct; (2) Plaintiff's Eighth Amendment excessive force claims should be dismissed because Plaintiff fails to allege a deprivation of any federal right or that Defendant May acted under color of state law; and (3) qualified immunity bars Plaintiff's claims. None of those arguments have merit for the reasons below.

### A. Plaintiff has plausibly stated First Amendment retaliation claims against Defendant May.

The second amended complaint alleges that Defendant May violated the First Amendment by retaliating against Plaintiff for previously filing a grievance. Defendant May's alleged retaliation took the form of placing excessively tight handcuffs on Plaintiff, forcefully twisting and bending Plaintiff's fingers and wrists, and placing a knee on Plaintiff's neck. (Doc. 8 at 13-14). Defendant May argues Plaintiff's First Amendment retaliation claims should be dismissed because Plaintiff has

not plausibly alleged that he engaged in any protected speech or conduct. (Doc. 35 at 3). The Court disagrees.

Under Eleventh Circuit precedent, filing "a grievance concerning the conditions of [a prisoner's] imprisonment" is constitutionally protected speech under the First Amendment. *Williams v. Radford*, 64 F.4th 1185, 1192 (11th Cir. 2023) (cleaned up). And the Eleventh Circuit has also held that "First Amendment rights to free speech and to petition the government for a redress of grievances are violated when a prisoner is punished for filing a grievance concerning the conditions of his imprisonment." *Douglas v. Yates*, 535 F.3d 1316, 1321 (11th Cir. 2008) (cleaned up).

Here, prior to the actions allegedly taken by Defendant May, Plaintiff had filed a grievance about the conditions of his confinement. Specifically, Plaintiff filed a grievance complaining that a FDOC officer (who worked for Defendant May, the warden) had confiscated and read Plaintiff's legal papers. (Doc. 8 at 5). Taking Plaintiff's allegations as true and liberally construing them—as the Court must do at this stage— Plaintiff has plausibly alleged that he engaged in protected speech as required for a First Amendment retaliation claim. *See Christmas v.*

*Nabors*, 76 F.4th 1320, 1333-34 (11th Cir. 2023) (recognizing the plaintiff "engaged in protected speech when he filed grievances" about the conditions of his confinement). Accordingly, Defendant May's motion to dismiss for failure to state a claim under the First Amendment should be denied.

### B. Plaintiff has plausibly alleged Eighth Amendment excessive force claims against Defendant May.

Defendant May next argues that Plaintiff has failed to plausibly allege Eighth Amendment excessive force claims. More specifically, Defendant May claims the second amended complaint (1) fails to allege that Plaintiff was deprived of any federal right, and (2) fails to allege that any such deprivation occurred under color of state law. (Doc. 35 at 3). Those arguments are meritless.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. Uses of force by prison officials violate the Eighth Amendment when the force is applied "maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). Force does not violate the Eighth Amendment when it is applied in a "good-faith effort to maintain or restore discipline." *Id.*

Here, Plaintiff has plausibly alleged excessive force claims against Defendant May. Plaintiff alleged that he did nothing to provoke Defendant May's actions, Defendant May targeted him because he filed a grievance on a fellow FDOC officer, and he was not resisting Defendant May. Taking these allegations as true, Plaintiff has plausibly alleged that Defendant May's use of force was not a "good-faith effort to maintain or restore discipline." *Id.* It is also plausible, based on Plaintiff's allegations when liberally construed, that the force was applied "maliciously and sadistically to cause harm" in retaliation for Plaintiff's grievance filed on November 23, 2019. *Id.* Therefore, Plaintiff has sufficiently alleged that he was deprived of a federal right by Defendant May—i.e., the right to be free from cruel and unusual punishments as guaranteed by the Eighth Amendment.

Defendant May further argues that Plaintiff's excessive force claims against him should be dismissed because Plaintiff has failed to allege Defendant May acted "under color of state law." (Doc. 35 at 3). To prevail on a civil rights claim under § 1983, "a plaintiff must show that he or she was deprived of a federal right by a person acting *under color of state law*." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir.

2001) (emphasis added). "A person acts under color of state law when he acts with authority possessed by virtue of his employment with the state." *Id.* "The dispositive issue is whether the official was acting pursuant to the power he/she possessed by state authority or acting only as a private individual." *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1523 (11th Cir. 1995). "It is firmly established that a defendant in a § 1983 suit acts under color of law when he abuses the position given to him by the State." *Griffin*, 261 F.3d at 1303 (citing *United States v. Classic*, 313 U.S. 299, 326 (1941)).

Here, Plaintiff plausibly alleges that Defendant May was acting "under color of state law." According to the facts alleged in the second amended complaint, Defendant May was working as a warden for the FDOC when he allegedly used excessive force on Plaintiff. In other words, Defendant May acted with the authority he possessed by virtue of his employment as a state official with the FDOC. Indeed, courts so routinely find that a defendant acts under color of state law when working as a state correctional officer that it is rarely directly discussed in written opinions but is often implicit in the court's holding. *See, e.g.*, *Sears v. Roberts*, 922 F.3d 1199 (11th Cir. 2019) (reversing the district

court's grant of summary judgment for excessive force when correctional officers were accused of using excessive force against the plaintiff and implicitly recognizing that the correctional officers acted under color of state law); *Whitman v. Hinton*, No. 4:18cv101, 2019 WL 3776472, at *3 (S.D. Ga. Aug. 9, 2019) ("Defendant was acting under color of state law at the time of the attack as he was working as a correctional officer for the Georgia Department of Corrections."). Defendant May's motion to dismiss on this ground, therefore, should be denied.

### C. Defendant May is not entitled to qualified immunity at this time.

Defendant May also moves to dismiss because of qualified immunity. (Doc. 35 at 4). "Under the qualified immunity doctrine, government officials performing discretionary functions are immune not just from liability, but from suit, unless the conduct which is the basis for suit violates clearly established federal statutory or constitutional rights of which a reasonable person would have known." *Sanders v. Howze*, 177 F.3d 1245, 1249 (11th Cir. 1999).

For defendants to receive qualified immunity, "they must first demonstrate that they were engaged in a discretionary duty." *Mercado v. City of Orlando*, 407 F.3d 1152, 1156 (11th Cir. 2005). If they were,

then the burden shifts to the plaintiff to establish that qualified immunity is unwarranted. *Id.* Meeting that burden requires "satisfying a two-part inquiry." *Id.* First, the plaintiff's allegations, if true, must establish a violation of a constitutional right. *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010). Second, that constitutional right must have been clearly established when the incident occurred. *Id.* The plaintiff must satisfy both parts, but the "analysis may be done in whatever order is deemed most appropriate for the case." *Id.*

Here, the Court has already discussed how Plaintiff's allegations—taken as true and construed liberally—plausibly state violations of Plaintiff's First and Eighth Amendment rights. Thus, all that remains is the second prong of the qualified immunity analysis—whether the constitutional right was clearly established when the incident occurred. As for Plaintiff's retaliation claim, Eleventh Circuit caselaw is clear that prison officials cannot retaliate against inmates for filing grievances. *See, e.g.*, *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003) ("The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech."). Thus, Defendant May is not entitled to qualified immunity on Plaintiff's retaliation claims. *See, e.g.*, *Hicks v.*

13

*Ferrero*, 241 F. App'x 595, 598 (11th Cir. 2007) (rejecting defendants' argument that they were entitled to qualified immunity when the plaintiff alleged that defendants retaliated against him for filing grievances by raising his security level); *Taylor v. Crews*, No. 4:14cv98, 2015 WL 5042721, at *9 (N.D. Fla. July 27, 2015) (rejecting defendants' qualified immunity defense and stating "[i]t has been clearly established . . . that a prison official cannot retaliate against an inmate for his good faith use of the grievance process").

As for Plaintiff's excessive force claims against Defendant May, a defense of qualified immunity is not available in this because Plaintiff has plausibly alleged excessive force in violation of the Eighth Amendment. *See Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002). This is because the use of force "maliciously and sadistically to cause harm" is clearly established to be a violation of the Constitution. *Id.* "There is simply no room for a qualified immunity defense when the plaintiff alleges such a violation." *Id.* Thus, Defendant May is not entitled to qualified immunity on Plaintiff's Eighth Amendment excessive force claims. *See Blake v. Gandy*, No. 5:20cv137, 2022 WL 2955285, at *6 (N.D. Fla. June 24, 2022) ("Because [the plaintiff] alleges

plausible Eighth-Amendment excessive-force claims against [the defendants, they] are not entitled to qualified immunity at this stage.").

## IV. Conclusion

For the reasons above, it is respectfully **RECOMMENDED** that Defendant May's motion to dismiss (Doc. 35) be **DENIED** and this matter be recommitted to the undersigned for further proceedings.

At Pensacola, Florida this 17th day of October 2023.

/s/ *Zachary C. Bolitho*
Zachary C. Bolitho
United States Magistrate Judge

### Notice to the Parties

Objections must be filed within fourteen days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control</u>. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.

15