UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

KENNETH WARREN FORD,
    Plaintiff,

v.                                                              Case No.: 3:23cv5086/LAC/ZCB

SCOTT MAY, et al.,
    Defendants.
_____/

## **REPORT AND RECOMMENDATION**

This is a *pro se* prisoner civil rights case under 42 U.S.C. § 1983. Plaintiff has sued three Florida Department of Corrections (FDOC) employees who worked at Walton Correctional Institution: (1) Scott May, Warden; (2) A. Ralph, Assistant Warden; and (3) A. Martin, Major. Plaintiff alleges violations of his First and Eighth Amendment rights. Currently before the Court is Defendant Marin's motion to dismiss (Doc. 59), which Plaintiff has opposed. (Doc. 74). For the reasons below, Defendant Martin's motion to dismiss should be denied.

I. **Summary of Plaintiff's Factual Allegations**[1]

On November 22, 2019, while imprisoned at Walton Correctional Institution, Plaintiff was searched by an FDOC officer after leaving the law library. (Doc. 8 at 5). During the search, the FDOC officer allegedly read and confiscated Plaintiff's "active civil litigation papers" for a lawsuit against another FDOC official. (*Id.* at 5-6). The next day, Plaintiff filed a grievance over the incident. (*Id.* at 6). On November 25, 2019, Plaintiff saw Defendants May, Ralph, and Martin in an area of the prison, and he personally informed them of the FDOC officer's actions. (*Id.*). Plaintiff also told Defendants that he had had filed a grievance but had heard nothing back. (*Id.*). After hearing that he had filed a grievance, Defendants called Plaintiff a "Writ Writer." (*Id.* at 6-7).

Approximately two weeks later on December 10, 2019, Plaintiff was on his way to a mental health classification callout. (*Id.* at 7). All three Defendants were present during the callout. (*Id.*). Plaintiff alleges that, because of the grievance he filed on November 23, 2019, Defendant Martin singled him out during the callout. (*Id.*). Defendant Martin

---

[1] At this point in the proceeding, the Court assumes the allegations are true. *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*, 48 F.4th 1222, 1229 (11th Cir. 2022).

accused Plaintiff of wearing untied shoes—an accusation that Plaintiff disputes. Defendant Martin ordered Plaintiff to step out of the callout line and tie his shoes. (*Id.* at 8). Plaintiff responded, "I don't have an attitude or anything but my shoes are tied. What exactly do you want me to do?" (*Id.*). Defendant Martin replied, "Give me those f****** shoes. You can get em [sic] back later when you learn how to stop writing grievances on my program officers for doing their f****** jobs!" (*Id.*). Plaintiff refused to give Defendant Martin the shoes. (*Id.*). Defendants May and Ralph overheard the disagreement between Plaintiff and Defendant Martin. (*Id.*).

Instead of taking steps to de-escalate the situation or reprimanding Defendant Martin for his actions, Defendant May instigated an altercation with Plaintiff. (*Id.*). More specifically, Defendant May approached Plaintiff, "getting close enough for their noses to [] touch[]." (*Id.*). Defendant May ordered Plaintiff to put his hands behind his back and cuff up. (*Id.*). Plaintiff complied. (*Id.*). Defendant May then placed handcuffs on Plaintiff's wrists and began tightening the cuffs until they caused "unbearable and instant sharp pain due to cutting off blood circulation to [Plaintiff's] wrist[s]." (*Id.*). Defendant May looked at

3

Plaintiff and said, "I'm going to break that spirit of yours n*****. You won't be filing no more grievances and lawsuits on me and my people after I snap those fingers and hands boy!" (*Id.*).

Plaintiff told Defendant May that the handcuffs were too tight and complained of "exploding pain and swelling to both his left and right wrist[s] and hands." (*Id.* at 9). After some verbal back-and-forth between Plaintiff and Defendant May, Plaintiff fell to the ground and declared a "psyche emergency." (*Id.*). Defendant May proceeded to "place his left knee on Plaintiff's neck while squatting down and using said knee to pin Plaintiff's face [to] the ground." (*Id.*). Defendant May, "without need or provocation," bent and twisted Plaintiff's left and right hands "diagonally and upward in unnatural positions against the already 'too tight' hand restraints to cause further internal pain in both hands and wrist[s]." (*Id.*).

Plaintiff heard Defendant Ralph yell to Defendant May, "[m]ake sure he can't file any more grievances or lawsuits . . . break that bastards hands . . . ." (*Id.* at 10). As a result of Defendant Ralph's encouragement, Defendant May applied more force and Plaintiff "thought his wrist to be broken as his left hand was pushed further upward and diagonally."

4

(*Id.*). Plaintiff's left index finger and right thumb were also injured in the incident. (*Id.*). While using force on Plaintiff, Defendant May allegedly "growled" in Plaintiff's left ear, "File a grievance on this boy . . . file one on this like you did [with the other FDOC officer]. I'm breaking these f****** hands today." (*Id.*). Plaintiff alleges Defendant Martin "continued to stand there observing Defendant May apply force without intervening while having the opportunity to stop it if he chose to." (*Id.* at 9).

After approximately five minutes, Plaintiff was placed in leg irons and carried back to his dorm. (*Id.* at 11). Plaintiff was seen by a nurse, but he claims the nurse never wrote down his injuries. (*Id.* at 12). As a result of this incident, Plaintiff claims to have suffered "long-term severe internal chronic pain in both his left and right wrist[s] and hands" and has ongoing feeling and mobility issues in his left hand. (*Id.* at 13). He also alleges the incident caused him psychological distress. (*Id.*).

Plaintiff brings claims against Defendants in their individual capacities under the First and Eighth Amendments. (*Id.* at 2, 13-14). With respect to Defendant Martin—the party whose motion to dismiss is currently before the Court—Plaintiff has brought an Eighth Amendment

failure-to-intervene claim. (*Id.* at 3, 14). As relief, Plaintiff seeks nominal, compensatory, and punitive damages. (*Id.* at 15).

## II. Motion to Dismiss Standard

Defendant Martin has moved to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. To survive dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). The plausibility standard is met only where the facts alleged enable "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

At the motion to dismiss stage, the plaintiff's allegations are taken as true and construed in the light most favorable to the plaintiff. *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*, 48 F.4th 1222, 1229 (11th

Cir. 2022). Additionally, a *pro se* litigant's complaint must be liberally construed. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006).

## III.   Discussion

Defendant Martin moves to dismiss Plaintiff's Eighth Amendment claim against him in the second amended complaint. He argues: (1) Plaintiff fails to allege that he was deprived of any federal right by Defendant Martin; (2) Plaintiff fails to allege that Defendant Martin acted under color of state law; and (3) qualified immunity bars Plaintiff's claim. (Doc. 59 at 3-5). None of those arguments are persuasive.

### A. Plaintiff plausibly alleged he was deprived of a federal right by Defendant Martin.

The Eighth Amendment "imposes a duty on prison officials to take reasonable measures to guarantee the safety of the inmates." *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014) (cleaned up). This means "an officer can be liable for failing to intervene when another officer uses excessive force." *Priester v. City of Riviera Beach*, 208 F.3d 919, 924 (11th Cir. 2000). "Even if an officer personally did not use excessive force, an officer who is present at the scene can be alternatively liable for failing to take reasonable steps to protect the

7

victim of another officer's use of excessive force." *Johnson v. White*, 725 F. App'x 868, 878 (11th Cir. 2018) (internal quotations omitted).

Here, Plaintiff has plausibly alleged a failure-to-intervene claim under the Eighth Amendment. First, Plaintiff has sufficiently alleged that Defendant May used excessive force.[2] And taking his allegations as true, Defendant Martin was present and in a position to intervene (but failed to take reasonable steps to do so) when Defendant May used excessive force. Rather than intervene, Plaintiff has alleged that Defendant Martin "st[ood] there observing" while Defendant May beat him. (Doc. 8 at 9). Under the applicable law, Plaintiff has plausibly alleged an Eighth Amendment violation based on a failure to intervene theory. *See Velazquez v. City of Hialeah*, 484 F.3d 1340, 1341 (stating that "an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance") (cleaned up). And an Eighth

---

[2] For a more thorough discussion on how Plaintiff plausibly states a claim for excessive force against Defendant May, see the Court's separate Report and Recommendation recommending the denial of Defendant May's motion to dismiss. (Doc. 69).

Amendment violation is a violation of a federal right. Thus, Defendant Martin's motion to dismiss should be denied.

### B. Plaintiff plausibly alleged that Defendant Martin acted under color of state law.

Defendant Martin further argues that Plaintiff's Eighth Amendment claim against him should be dismissed because Plaintiff fails to allege Defendant Martin acted "under color of state law." (Doc. 59 at 3). To prevail on a civil rights claim under § 1983, "a plaintiff must show that he or she was deprived of a federal right by a person acting under color of state law." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001). "A person acts under color of state law when he acts with authority possessed by virtue of his employment with the state." *Id.* "The dispositive issue is whether the official was acting pursuant to the power he/she possessed by state authority or acting only as a private individual." *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1523 (11th Cir. 1995). "It is firmly established that a defendant in a § 1983 suit acts under color of law when he abuses the position given to him by the State." *Griffin*, 261 F.3d at 1303 (citing *United States v. Classic*, 313 U.S. 299, 326 (1941)).

Here, Plaintiff has plausibly alleged that Defendant Martin was acting "under color of state law." According to the facts alleged in the second amended complaint, Defendant Martin was working as a correctional officer at a prison operated by the FDOC at the time when the incident allegedly occurred. This allegation is plainly sufficient to show that Defendant Martin was acting under color of state law. Indeed, courts so routinely find that a defendant acts under color of state law when working for the state as a correctional officer that it is rarely directly discussed in written opinions but is often implicit in the court's holding. *See, e.g., Sears v. Roberts*, 922 F.3d 1199 (11th Cir. 2019) (reversing the district court's grant of summary judgment for excessive force when correctional officers were accused of using excessive force against the plaintiff and implicitly recognizing that the correctional officers acted under color of state law); *Whitman v. Hinton*, No. 4:18cv101, 2019 WL 3776472, at *3 (S.D. Ga. Aug. 9, 2019) ("Defendant was acting under color of state law at the time of the attack as he was working as a correctional officer for the Georgia Department of Corrections."). Defendant Martin's motion to dismiss, therefore, should be denied.

### C. Defendant Martin is not entitled to qualified immunity at this time.

Defendant Martin also moves to dismiss on the basis of qualified immunity. (Doc. 59 at 3-5). "Under the qualified immunity doctrine, government officials performing discretionary functions are immune not just from liability, but from suit, unless the conduct which is the basis for suit violates clearly established federal statutory or constitutional rights of which a reasonable person would have known." *Sanders v. Howze*, 177 F.3d 1245, 1249 (11th Cir. 1999).

For defendants to receive qualified immunity, "they must first demonstrate that they were engaged in a discretionary duty." *Mercado v. City of Orlando*, 407 F.3d 1152, 1156 (11th Cir. 2005). If they were, then the burden shifts to the plaintiff to establish that qualified immunity is unwarranted. *Id*. Meeting that burden requires "satisfying a two-part inquiry." *Id*. First, the plaintiff's allegations, if true, must establish a violation of a constitutional right. *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010). Second, that constitutional right must have been clearly established when the incident occurred. *Id*. The plaintiff must satisfy both parts, but the "analysis may be done in whatever order is deemed most appropriate for the case." *Id*.

11

Here, the Court has already discussed how Plaintiff's allegations—taken as true and construed liberally—plausibly state a violation of the Eighth Amendment. Thus, all that remains is the second prong of the qualified immunity analysis—whether the constitutional right was clearly established when the incident occurred. The defense of qualified immunity is generally not available for claims alleging excessive force in violation of the Eighth Amendment. *Skritch v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002). This is because it is clearly established that correctional officers cannot use force maliciously or sadistically for the very purpose of causing harm. *Id.* at 1305. Moreover, caselaw is clear that a prison official has a duty to intervene during another officer's use of excessive force. *Id.* at 1301 ("[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for his nonfeasance."). Therefore, Defendant Martin is not entitled to qualified immunity at this time. *See, e.g.*, *id.* (affirming the district court's conclusion that defendants who failed to intervene in excessive force used by other officer-defendants were not entitled to qualified immunity); *Jackson v. Catanzariti*, No. 6:12cv113, 2019 WL 4874809, at *25 (S.D.

Ga. Oct. 2, 2019) ("Nonfeasance by an officer in the face of another officer's excessive force, when that officer is in a position to intervene, violates clearly established law.").

## IV. Conclusion

For the reasons above, it is respectfully **RECOMMENDED** that Defendant Martin's motion to dismiss (Doc. 59) be **DENIED** and this matter be recommitted to the undersigned for further proceedings.

At Pensacola, Florida this 27th day of October 2023.

/s/ *Zachary C. Bolitho*
Zachary C. Bolitho
United States Magistrate Judge

## Notice to the Parties

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control</u>. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.